**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MAHARI BAILEY** | : | **No. 10-** |
| **TIMOTHY STREATY,** | | **JURY TRIAL DEMANDED** |
| **FERNANDO MONTERO,** | : | |
| **PRESTON FULTON,** | | |
| **GREGORY BLACKMON, JR.,** | : | |
| **JOHN CORNISH,** | | |
| **CARL CUTLER and** | : | |
| **JEWELL WILLIAMS,** | | |
| **Individually and on behalf of a class of** | : | |
| **all others similarly situated,** | | |
| **Plaintiffs,** | : | |
| **v.** | | |
| **CITY OF PHILADELPHIA,** | : | |
| **CHARLES RAMSEY,** | | |
| **Commissioner of the Philadelphia** | : | |
| **Police Department,** | | |
| **OFFICER KEITH DONOFRIO,** | | |
| **BADGE NUMBER,** | : | |
| **OFFICER JANE DOE,** | | |
| **OFFICER MICHAEL McCORMICK,** | : | |
| **BADGE NUMBER 7300,** | | |
| **OFFICER GREGORY GIACOMELLI,** | : | |
| **BADGE NUMBER 3916,** | | |
| **OFFICER MARTIN CAMPBELL,** | : | |
| **BADGE NUMBER 5262.** | | |
| **OFFICER PAUL PORT,** | : | |
| **BADGE NUMBER 3146,** | | |
| **OFFICER THOMAS SCHAFFLING,** | : | |
| **BADGE NUMBER 7535,** | | |
| **OFFICER TIMOTHY DEVLIN,** | : | |
| **BADGE NUMBER 1914,** | | |
| **OFFICER DONNA STEWART,** | : | |
| **BADGE NUMBER 6116,** | | |
| **SGT. KEVIN BERNARD,** | : | |
| **BADGE NUMBER 244,** | | |
| **OFFICERS JOHN DOE(S) #1-12,** | : | |
| **individually and as police officers for the** | | |
| **City of Philadelphia** | : | |
| **c/o Law Department** | | |
| **1515 Arch Street** | : | |
| **Philadelphia, PA 19102,** | | |
| **Defendants** | : | |

## COMPLAINT
## Preliminary Statement

1.  This is a civil rights action in which named plaintiffs Mahari Bailey, Timothy Streaty, Fernando Montero, Preston Fulton, Gregory Blackmon, Jr., John Cornish, Carl Cutler and Jewell Williams, on behalf of themselves and a class of similarly situated individuals, seek relief for defendants' violation of rights, privileges, and immunities secured by the Civil Rights Act of 1871, 42 U.S.C. §1983, the Fourth and Fourteenth Amendments to the United States Constitution, and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000(d), et seq. ("Title VI").

2.  The defendants have implemented and enforced a policy and practice of stops, frisks, searches and detentions of persons, including plaintiffs, without probable cause or reasonable suspicion as required by the Fourth Amendment.

3.  The stops, frisks, searches and detentions by Philadelphia Police Department ("PPD") officers are often based on constitutionally impermissible considerations of race and/or national origin in violation of the Equal Protection Clause of the Fourteenth Amendment.  The victims of such racial and/or national origin profiling are principally Black and Latino men.

4.  These constitutional abuses are directly and proximately caused by policies, practices and/or customs of the defendants City of Philadelphia ("City") and Police Commissioner Ramsey who have acted with deliberate indifference to the constitutional rights of the plaintiffs by: (a) failing to properly train, supervise and discipline PPD officers; (b) inadequately monitoring PPD officers and their practices related to pedestrian and vehicle stops; (c) failing to properly discipline PPD officers who engage in constitutional abuses; and (d) failing to rectify the PPD's unconstitutional practices of stops, seizures, searches and detentions.

5.  As a direct and proximate result of defendants' policies, practices and/or customs, thousands of persons in the plaintiff class, and in particular Blacks and Latinos, have been subjected to unconstitutional seizures, frisks, searches and detentions by the defendants and other PPD officers, at times accompanied by the unreasonable use of force.

6.  The named plaintiffs seek to represent a certified class for the purpose of obtaining injunctive and declaratory relief only.  The named plaintiffs seek a class-wide judgment declaring that the policies, practices and/or customs described in this Complaint violate the Fourth and Fourteenth Amendments and Title VI of the Civil Rights Act of 1964, and a class-wide injunction enjoining the defendants from continuing such policies, practices and/or customs.  In addition, the named plaintiffs seek compensatory damages.

### Jurisdiction

7.  Jurisdiction is conferred upon this Court under 28 U.S.C. §§1331 and 1343(3) and (4), as this action seeks redress for the violation of plaintiffs' constitutional and civil rights, and under 28 U.S.C. §1367 to address the supplemental state law claims.

8.  Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§2201 and 2202 and Rule 57, Federal Rules of Civil Procedure.

### Parties

9.  Plaintiff Mahari Bailey ("Bailey") is a 27 year old African-American man who resides in the City of Philadelphia.

10.  Plaintiff Timothy Streaty ("Streaty") is a 32 year old African-American man who resides in the City of Philadelphia.

11.  Plaintiff Fernando Montero ("Montero") is a 27 year old Latino man who resides in the City of Philadelphia.

12.   Plaintiff Preston Fulton ("Fulton") is a 20 year old African-American man who resides in the City of Philadelphia.

13.   Plaintiff Gregory Blackmon, Jr. ("Blackmon") is a 20 year old African-American man who resides in the City of Philadelphia.

14.   Plaintiff John Cornish ("Cornish") is a 65 year old African-American man who resides in the City of Philadelphia.

15.   Plaintiff Carl Cutler ("Cutler") is a 65 year old African-American man who resides in the City of Philadelphia.

16.   Plaintiff Jewell Williams ("Williams") is a 52 year old African-American man who resides in the City of Philadelphia.

17.   Defendant City of Philadelphia is a municipality of the Commonwealth of Pennsylvania and manages, directs and controls the PPD which employs defendants Ramsey, Donofrio, Jane Doe, McCormick, Giacomelli, Campbell, Port, Schaffling, Devlin, Stewart, Bernard and John Doe(s) #1-12, who are police officers for the City of Philadelphia.

18.   Defendant Charles Ramsey is the Commissioner of the PPD and at all times relevant to this action was a final decision-maker for the City of Philadelphia regarding the operation of the PPD.  Defendant Ramsey is responsible for establishing the practices and policies of the PPD.  He is also responsible for the hiring, screening, training, supervision, discipline and control of the police officers under his command, including the defendant officers in this case. Defendant Ramsey is sued in his official and individual capacities.

19.   Defendants Donofrio, Jane Doe, McCormick, Giacomelli, Campbell, Port, Schaffling, Devlin, Stewart, Bernard and John Doe(s) #1-12 (hereinafter "the defendant officers") are police officers for the Philadelphia Police Department who at all relevant times

were acting under color of state law.  The defendant officers are sued in their individual
capacities.

## Class Action Allegations

20.  Pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, the named
plaintiffs seek to represent a certified plaintiff class consisting of all persons who have been or
will be subjected to defendants' policy, practice and/or custom of stopping, seizing, frisking,
searching and detaining persons in the absence of probable cause or reasonable suspicion, or on
the basis of race and/or national origin, in violation of the Fourth and Fourteenth Amendments.

21.  The members of the class are so numerous as to render joinder impracticable.
Thousands of people are stopped, frisked, searched and detained each year by the PPD without
probable cause or reasonable suspicion of criminal conduct, but rather on constitutionally
impermissible considerations of race and/or national origin.

22.  Joinder is also impracticable because many members of the class are not aware that
their constitutional rights have been violated and that they have the right to seek redress in court.
Many members of the class are without the means to retain counsel to represent them in a civil
rights lawsuit.  There is no appropriate avenue for the protection of the class members'
constitutional rights other than a class action.

23.  The class members share questions of law and fact in common, including:

a.  whether the PPD engages in a policy, practice and/or custom of stopping, seizing,
searching and detaining members of the class in the absence of probable cause or
reasonable suspicion of criminal conduct as required by the Fourth Amendment;

b.  whether the PPD engages in profiling on the basis of race and/or national origin in
targeting class members for such stops, searches and detentions in violation of the Equal
Protection Clause of the Fourteenth Amendment;

c. whether the defendants City and Commissioner Ramsey have failed to adequately and properly train, supervise, monitor and discipline PPD officers, and whether those failures have caused the constitutional violations; and

d. whether the defendants City and Commissioner Ramsey have failed to rectify unconstitutional stops, frisks, detentions and searches, and whether this failure has caused and will continue to cause constitutional violations.

24. The named plaintiffs' claims are typical of those of the class. They have been and likely will continue to be, seized, stopped, frisked and/or searched without probable cause or reasonable suspicion of criminal conduct, and on the basis of their race and/or national origin.

25. The legal theories under which the named plaintiffs seek declaratory and injunctive relief are the same as those on which all members of the class will rely, and the harms suffered by the named plaintiffs are typical of the harms suffered by class members.

26. The named plaintiffs have a strong personal interest in the outcome of this action, have no conflicts of interest with members of the plaintiff class, and will fairly and adequately protect the interests of the class. The named plaintiffs are all African-American and Latino men who reside in and/or visit neighborhoods where PPD officers have been deployed and conduct stops and seizures. All of the named plaintiffs have been subjected to improper stops, frisks, searches and detentions on repeated occasions. As long as the PPD engages in its policy, practice and/or custom of groundless seizures and searches, the named plaintiffs remain at risk of being illegally seized again by the PPD.

27. The named plaintiffs are represented by David Rudovsky and Paul Messing of the law firm of Kairys, Rudovsky, Messing & Feinberg, Mary Catherine Roper, the Pennsylvania ACLU, and Seth Kreimer, Professor at the University of Pennsylvania Law School. All are experienced civil rights counsel who have litigated a wide range of civil rights actions under §1983 including class action lawsuits. Counsel for the plaintiffs have the resources, expertise

6

and experience to prosecute this action.  Counsel for the plaintiffs know of no conflicts among members of the class or between the attorneys and members of the class.

28.  The plaintiff class should be certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure as the defendants have acted on grounds generally applicable to the class, thereby making class-wide declaratory and injunctive relief appropriate.

## Factual Allegations

### A.  Allegations of the Named Plaintiffs

#### Plaintiff Mahari Bailey:

29.  Plaintiff Mahari Bailey is twenty-seven years old and a lifelong Philadelphia resident.  He graduated from Central High School in 2000, received a B.S. from Hampton University in 2004, and a J.D. from Georgetown Law School in 2007.  Mr. Bailey has practiced law in Philadelphia since 2007.  Mr. Bailey is African-American.

30.  In early 2008, plaintiff Bailey, in the company of other Black men, was in the neighborhood of West Philadelphia when he was approached by officers hereinafter referred to as defendants John Doe(s) #1, who, without cause or justification, stopped, searched and verbally abused Mr. Bailey, and thereafter searched his vehicle which was nearby.  After a period of detention, Mr. Bailey was released and no criminal charges were brought against him.

31.  On or about September 12, 2008, Plaintiff Bailey was driving his automobile in the 700 block of North 64th Street,  Philadelphia.  Without cause or justification, he was pulled over by officers hereinafter referred to as defendants John Doe(s) #2, who asked Mr. Bailey if there were guns or drugs in his vehicle.  Mr. Bailey identified himself as an attorney, told defendants Doe(s) #2 that there was no contraband in his car, and advised the officers that he had previously filed a complaint with Captain Singleton about an earlier unlawful stop by

7

Philadelphia police officers.  After a period of detention, Mr. Bailey was released and no

criminal charges were brought against him.

32.  On or about August 9, 2009, plaintiff Bailey and some African-American friends

were standing in the area of 53rd and Euclid Streets in Philadelphia.  Plaintiff Bailey was

approached by officers hereinafter referred to as defendants John Doe(s) #3, who, without cause

or justification, told Mr. Bailey and his companions to stand against a wall to be searched.

When Mr. Bailey told the police that he was an attorney and refused to consent to a search, one

of the officers raised his fists in a threatening manner, told Mr. Bailey that he "didn't give a fuck

who you are," and left the scene.   Mr. Bailey was released and no criminal charges were brought

against him.

33.  On or about May 5, 2010, Plaintiff Bailey was driving his vehicle at 59th and Master

Streets in Philadelphia.   Without cause or justification, he was pulled over by officers

hereinafter referred to as defendants John Doe(s) #4.  When Mr. Bailey asked why he had been

stopped, one of the officers told him to "shut up" and stated that Mr. Bailey "was in the wrong

neighborhood."  When Mr. Bailey protested about being repeatedly stopped by the police for no

reason, he was told that the tinted windows on his vehicle were illegal.  Mr. Bailey advised the

officers that vehicles of that make and model come with tinted windows which were not

unlawful.  The officers issued a ticket to Mr. Bailey on the false and pretextual charge of a tinted

windows violation in retaliation for his verbal protest.  The charge was dismissed at Philadelphia

Traffic Court.

34.  On each of these occasions, defendants Doe(s) #1-4 subjected Mr. Bailey, without

probable cause or reasonable suspicion, to an unlawful stop, frisk, search and/or detention based

on his race in violation of the Fourth Amendment and the Equal Protection Clause of the

Fourteenth Amendment. This unconstitutional conduct is a direct and proximate result of policies, practices and/or customs of the defendants City and Commissioner Ramsey.

**Plaintiff Timothy Streaty:**

35.  Plaintiff Timothy Streaty is thirty-two years old and a lifelong Philadelphia resident. He graduated from Simon Gratz High School in 1996 and worked for several years at Medimmune, a pharmaceutical company in Philadelphia.  Mr. Streaty is African-American.

36.  On September 24, 2009, at about 5:00 p.m., plaintiff Streaty was standing on the corner at 16th and Ontario Streets in Philadelphia in the company of other African-American men.

37.  At that time and place, without cause or justification, plaintiff Streaty was approached by defendants Donofrio and Jane Doe.  Mr. Streaty and the other men were told to leave the area.  Mr. Streaty did not immediately leave and the officers threatened to arrest him. As Mr. Streaty called 911 on his cell phone to ask that a supervisor come to the scene, defendant Donofrio handcuffed and searched Mr. Streaty and placed him under arrest.

38.  Plaintiff Streaty was transported to the police district where he was detained for a prolonged period and later released on the false charge of failure to disperse.

39.  On March 12, 2010, Judge Georgeanne Daher of the Municipal Court of Philadelphia dismissed the charges.

40.  Defendants Donofrio and Jane Doe subjected Mr. Streaty to a stop, frisk, search, detention, arrest and prosecution without cause and did so based on his race.

41.  Plaintiff Streaty has been stopped, questioned, frisked and detained by officers hereinafter referred to as defendants John Doe(s) #5 without probable cause or reasonable suspicion on several other occasions.  The most recent stop was in July, 2010 when he was

walking on North 18th Street in Philadelphia.  On all of the occasions described above, plaintiff

Streaty was subjected to an unlawful stop, frisk, search and detention in the absence of probable

cause or reasonable suspicion and based on his race in violation of the Fourth Amendment and

the Equal Protection Clause of the Fourteenth Amendment. This unconstitutional conduct is a

direct and proximate result of policies, practices and/or customs of the defendants City and

Commissioner Ramsey.

**Plaintiff Fernando Montero**:

42.  Plaintiff Fernando Montero is twenty-seven years old and a Latino Philadelphia

resident.  He received his B.A. from Princeton in 2006 and has been employed as an

ethnographer with the Anthropology Department of the University of Pennsylvania.  For the past

year, he has been working on a book about the Latino community in Philadelphia, research that

has brought him to Latino neighborhoods in the City on a regular basis.

43.  In early 2010, plaintiff Montero was walking on Cambria Street in Philadelphia

when he was approached by officers hereinafter referred to as defendants John Doe(s) #6, who,

without cause or justification, stopped and seized Mr. Montero and questioned him about his

identity and purpose for being in the area.  After a period of detention, Mr. Montero was released

and no criminal charges were brought against him.

44.  In March, 2010, plaintiff Montero was a passenger in a vehicle operated by a

colleague from the University of Pennsylvania at Front and Allegheny Streets in Philadelphia.

Without cause or justification, he was pulled over by officers hereinafter referred to as

defendants John Doe(s) #7, who detained Mr. Montero to question him about drug activity in the

area.  When Mr. Montero protested the detention, the officers told him to leave the area or be

subject to arrest.  After a period of detention, Mr. Montero was released and no criminal charges were brought against him.

45.   In July 2010, plaintiff Montero was with a colleague in a park at Indiana and Ella Streets in Philadelphia.  Plaintiff Montero was approached by officers hereinafter referred to as defendants John Doe(s) #8, who, without cause or justification, stopped and seized Mr. Montero and questioned him about his identity and purpose for being in the area.  After a period of detention, Mr. Montero was released and no criminal charges were brought against him.

46.   On September 29, 2010, plaintiff Montero was walking near the intersection of B and Cambria Streets in Philadelphia.   Plaintiff Montero was approached by officers hereinafter referred to as defendants John Doe(s) #9, who, without cause or justification, stopped and seized Mr. Montero, questioned him about his purpose for being in the area, and subjected him to verbal abuse and a search of his person.  After a period of detention, Mr. Montero was released and no criminal charges were brought against him.

47.   On each of the occasions when plaintiff Montero was stopped, searched and/or detained, defendants John Doe(s) #6-9 had no probable cause or reasonable suspicion, and they subjected plaintiff Montero to a unlawful stop, frisk, search and/or detention based on his race and/or national origin in violation of the Fourth Amendment and the Equal Protection Clause of the Fourteenth Amendment. This unconstitutional conduct is a direct and proximate result of policies, practices and/or customs of the defendants City and Commissioner Ramsey.

**Plaintiff Gregory Blackmon, Jr.:**

48.  Plaintiff Gregory Blackmon, Jr. is twenty-one years old and a lifelong Philadelphia resident.  He graduated from Simon Gratz High School in 2007, completed a year at Philadelphia Community College, and has worked as a carpenter.  Mr. Blackmon is African-American.

49.  On November 7, 2008, at about 7:30 p.m., plaintiff Blackmon entered a grocery store at the corner of 18th and Ontario Streets in Philadelphia, ordered some food, and stepped outside to await his order.  Once outside, as he talked to other African American men at that location, he was approached by defendants McCormick, Giacomelli, Campbell and Port who, without cause or justification, pushed him against a wall, frisked, questioned and detained him.  The officers found no weapons, contraband, or evidence of criminal conduct during the search of plaintiff Blackmon.  After a period of detention, Mr. Blackmon was released and no formal charges were filed against him.

50.  Since November 7, 2008, plaintiff Blackmon has been unlawfully stopped, questioned, frisked and detained by officers hereinafter referred to as defendants Doe(s) #10 on several other occasions, most recently during the week of July 26, 2010 when he was walking near the corner of 17th and Ontario Streets in Philadelphia.  On all of the occasions described above, plaintiff Blackmon was subjected to an unlawful stop, frisk, search and detention in the absence of probable cause or reasonable suspicion and based on his race in violation of the Fourth Amendment and the Equal Protection Clause of the Fourteenth Amendment. This unconstitutional conduct is a direct and proximate result of policies, practices and/or customs of the defendants City and Commissioner Ramsey.

**Plaintiff Preston Fulton:**

51.   Plaintiff Preston Fulton is twenty-one years old and a lifelong Philadelphia resident. He left high school during the 12th grade and has been employed on a part-time basis.  Mr. Fulton is African-American.

52.   On November 7, 2008, at about 7:30 p.m., plaintiff Fulton entered a grocery store at the corner of 18th and Ontario Streets in Philadelphia, ordered some food, and stepped outside to await his order.  Once outside, he, plaintiff Gregory Blackmon, Jr. and other African American men were approached by defendants McCormick, Giacomelli, Campbell and Port who, without cause or justification, pushed Mr. Fulton against a wall, frisked and questioned him.  The officers found no weapons, contraband, or evidence of criminal conduct during the search of plaintiff Fulton and his companions.  After a period of detention, Mr. Fulton was released and no formal charges were filed against him.

53.   Since November 7, 2008, plaintiff Fulton has been unlawfully stopped, questioned, frisked and detained by officers hereinafter referred to as defendants Doe(s) #11 on several other occasions, most recently during the week of July 19, 2010 when he was walking near the corner of 17th and Gratz Streets in Philadelphia.  On all of the occasions described above, plaintiff Fulton was subjected to an unlawful stop, frisk, search and detention in the absence of probable cause or reasonable suspicion and based on his race in violation of the Fourth Amendment and the Equal Protection Clause of the Fourteenth Amendment. This unconstitutional conduct is a direct and proximate result of policies, practices and/or customs of the defendants City and Commissioner Ramsey.

**Plaintiffs John Cornish, Carl Cutler and Jewell Williams**

54.  Plaintiff John Cornish is 65 years old and a lifelong Philadelphia resident.  He is employed with the City of Philadelphia.  Mr. Cornish is African American.

55.  Plaintiff Carl Cutler is 65 years old and a lifelong Philadelphia resident.  He recently retired after working for more than twenty years as a tailor and presser for a cleaning establishment in Philadelphia.  Mr. Carver is African American.

56.  Plaintiff Jewell Williams is 52 years old and a lifelong Philadelphia resident.  Since 2001, he has represented the 197th District as a Member of the Pennsylvania House of Representatives.  Mr. Williams is African American.

57.  On or about March 28, 2009, plaintiff John Cornish was driving his automobile on the 1600 block of York Street in Philadelphia.  Plaintiff Carl Cutler was a passenger in the vehicle.  Without cause or justification, defendants Thomas Schaffling, Timothy Devlin and Donna Stewart, acting in concert and conspiracy, stopped the vehicle, seized and detained Mr. Cornish and Mr. Carver.

58.  At the same time, plaintiff Jewell Williams was driving his motor vehicle west on the 1600 block of York Street in Philadelphia.

59.  Plaintiff Williams stopped his vehicle because traffic was blocked by police activity related to the stop of Mr. Cornish several car lengths in front of him.

60.  At that point, defendant Schaffling, without cause or justification, ordered plaintiff Cornish from his vehicle, frisked him roughly and detained him at that location.  Mr. Cornish's property, including cash, was placed on the outside of the vehicle.

61.  At the same time, defendant Stewart ordered plaintiff Cutler from the vehicle, frisking him roughly and detained him at that location.

62.  As this was transpiring, Mr. Cornish's cash starting to blow off the car, attracting the attention of bystanders.  Plaintiff Williams exited his vehicle and, while remaining next to his car and observing bystanders grab the money, asked the crowd to "leave the man's money alone."

63.  At this point, defendant Schaffling began yelling profanities and threats of physical harm at plaintiff Cornish.

64.  Simultaneously, defendant Steward placed plaintiff Cutler in excessively tight handcuffs.  Defendant Schaffling then placed plaintiff Cornish in excessively tight handcuffs, and thereafter both plaintiffs Cornish and Cutler were detained in a patrol car.

65.  Defendant Devlin approached plaintiff Williams and ordered him to "get back in the fucking car and move your car away."  Plaintiff Williams, while remaining next to his car, identified himself to defendant Devlin as a State official, and showed his official State identification.

66.  Defendant Devlin then ordered plaintiff Williams to "get back in your fucking car before I give you a bunch of tickets."

67.  Plaintiff Williams asked to speak to defendant Devlin's supervisor when, without cause or justification, he was handcuffed by defendant Devlin in an excessively tight manner.

68.  Defendant Bernard, who was on the scene as the ranking supervisory PPD official, approached plaintiff Williams and, without cause or justification, used rude, profane and insulting language toward plaintiff Williams, and physically pushed him into a police vehicle.

69.  Defendant Stewart, without cause or justification, seized plaintiff Cornish's vehicle and drove it to 19th and York Streets, while both plaintiffs Cornish and Cutler followed while handcuffed and detained in the rear of a patrol car.

15

70.   Upon arriving at 19th and York Streets, plaintiff Cornish was uncuffed, and his vehicle and other possessions were returned to him, less a substantial amount of cash that had been unlawfully seized by the officers and had blown off the vehicle.  Plaintiffs Cornish and Cutler were released from custody and no formal criminal charges were filed against them.

71.   Plaintiff Williams was told that he was under arrest on the criminal charge of disorderly conduct.

72.   Defendants Schaffling, Devlin, Stewart and Bernard refused plaintiff Williams' repeated requests to loosen the painfully tight handcuffs.  The application of the excessively tight handcuffs caused plaintiffs Cornish, Cutler and Williams to sustain physical injuries, substantial pain and discomfort, some of which may be permanent.

73.   Defendants Schaffling, Devlin, Stewart and Bernard, acting in concert and conspiracy and without cause or justification, detained plaintiff Williams, handcuffed, in their vehicle for an excessive period of time, driving him first to the 23rd District police station, then to the Police Administration Building, and then back to the 23rd District police station.  Plaintiff Williams was ultimately released and no formal criminal charges were filed against him.

74.   Defendant Bernard, as the ranking supervisory official on the scene, failed to intervene to prevent the continuing unlawful actions that subordinate officers – defendants Schaffling, Devlin and Stewart – directed at plaintiffs Cornish, Carver and Williams.

75.   At no time did plaintiffs Cornish, Cutler and Williams pose a threat of harm to the defendant officers or any other police officers or civilians.  At no time did plaintiffs Cornish, Cutler and Williams violate the laws of the United States, the Commonwealth of Pennsylvania, and the City of Philadelphia, or engage in any actions or conduct that justified the actions of defendants Schaffling, Devlin, Stewart and Bernard.

16

76.   Defendants Schaffling, Devlin, Stewart and Bernard subjected plaintiffs Cornish, Cutler and Williams to unlawful stops, frisks, searches, arrests, unreasonable force and detentions in the absence of probable cause or reasonable suspicion and based on their race in violation of the Fourth Amendment and the Equal Protection Clause of the Fourteenth Amendment. This unconstitutional conduct is a direct and proximate result of policies, practices and/or customs of the defendants City and Commissioner Ramsey.

77.   On several other occasions over the past two years, plaintiff Williams has been unlawfully stopped, questioned, frisked and/or detained by officers hereinafter referred to as Defendants John Doe(s) #12.   On each of those occasions, plaintiff Williams was subjected to unlawful stops, frisks, searches and/or detentions in the absence of probable cause or reasonable suspicion and based on his race in violation of the Fourth Amendment and the Equal Protection Clause of the Fourteenth Amendment. This unconstitutional conduct is a direct and proximate result of policies, practices and/or customs of the defendants City and Commissioner Ramsey.

*     *     *     *     *     *     *     *     *     *     *     *

78.   As a result of the policies, practices, customs, actions and conduct of all Defendants, all named plaintiffs suffered harm, including humiliation, pain, physical injuries and/or emotional distress, some of which may be permanent, loss of liberty, and/or violations of their constitutional and statutory rights.

79.   All plaintiffs intend to continue to frequent the neighborhoods where they have been previously stopped, seized, frisked, searched and/or detained as described above, and have a reasonable fear that they will again be subject to similar unlawful conduct by officers of the PPD based on their race and/or national origin in violation of the Fourth and Fourteenth Amendments.

17

**B.  Allegations of City Policy, Practice and Custom**

**PPD's History of a Policy, Practice and/or Custom of Unjustified Stops**

80.   The PPD has a history of conducting stops, frisks, detentions and searches without probable cause or reasonable suspicion and of intentionally subjecting persons to these measures, at times accompanied by the unreasonable use of force, based on their race or ethnicity.

81.   In 1996, in the matter of *NAACP et al. v. City of Philadelphia*, No. 96-6045, E.D. Pa., the parties entered into a Settlement Agreement that required the City of Philadelphia to implement policy and training initiatives to ensure that police officers abide by restrictions on their investigative powers under the Fourth and Fourteenth Amendments.  The Agreement provided:

> a.  There should be specific and detailed training with respect to equal treatment of citizens, promulgation of disciplinary regulation for racially biased police work, and serious and sustained diversity and cultural awareness training in the Academy and on a regular periodic basis for all officers, supervisors and administrative officers.

> b.  A Deputy Commissioner should (1) monitor police records and complaints as they involve minorities and allegations of racial discrimination, (2) act as a liaison to representatives of minority communities and to officials in the Department dealing with race related issues, and (3) monitor programs with respect to hiring and promotion of minorities.

> c.  There should be a comprehensive review of police department policies and practices such as discretionary pedestrian and vehicle stops that have the potential for racially biased law enforcement.  All pedestrian and vehicle stops should be recorded on 75-48s or other reporting forms even if the stop does not yield information, detention, evidence or an arrest.  Each document must state the reason for the stop, for any police action taken (e.g., frisk, search, questioning), and the race of the person(s) stopped.

> d.  The Department should review and audit, on a regular basis, the patterns of these stops to determine whether impermissible racial factors are involved.  Individuals identified on the police reports, but against whom no charges have been made, should be contacted on a random basis to determine if the police conduct was justified and to examine any possible racial patters.

e.  Individual officers' and supervisors' files (as computerized) should contain
any allegations or findings of racial bias.  In addition, the records of stops,
searches, arrest and civilian complaints in the files should be periodically
reviewed to determine whether racial bias or patterns are evident.  In this audit
process the Department should randomly interview individuals who were stopped,
but were not charged with any criminal conduct.

82.   A principal reason for these provisions was a history of racially biased policing in

Philadelphia.  On three separate occasions in the 1980's federal courts intervened to enjoin PPD

practices that violated the Fourth and Fourteenth Amendments.  See, *Cliett v. City of*

*Philadelphia*, Civil Action No. 85-1846 (E.D.Pa. 1985)(consent decree arising out of the

unconstitutionality of "Operation Cold Turkey," during which 1,500 individuals were unlawfully

subjected to search and arrest); *Spring Garden United Neighbors v. City of Philadelphia*, 614

F.Supp. 1350 (E.D.Pa. 1985)(enjoining police sweep of Latinos in Spring Garden area in

aftermath of a shooting of a police officer); *Arrington v. City of Philadelphia*, Civil Action No.

88-2264 (E.D.Pa. 1988)(enjoining the stop and searches of young African-American males

during investigation of "Center City Stalker").

83.   The events that precipitated the lawsuit in *NAACP v. City of Philadelphia*, known as

the 39th Police District Scandal, involved the unlawful arrest, search and prosecution of hundreds

of persons on false or otherwise improper narcotics charges, virtually all of whom were African-

American or Latino.  Officers of the 39th Police District flagrantly violated the Fourth and

Fourteenth Amendments in the searches and arrests of these individuals.  Ultimately, the District

Attorney of Philadelphia agreed to vacate hundreds of convictions, and the City of Philadelphia

agreed to pay compensation to those wrongfully accused in a total amount of over $6 million.

84.   As part of the Settlement Agreement in *NAACP v. City of Philadelphia*, the parties

agreed that the City would appoint an Integrity and Accountability Officer ("IAO") to assess and

monitor the City's compliance with the Agreement. The parties also agreed that the plaintiffs, through their attorneys (who are counsel in this case), would also monitor the City's compliance.

85. To ensure proper monitoring, the IAO and counsel for the plaintiffs were provided documents and data from the PPD relevant to the various provisions of the Settlement Agreement. This monitoring included reviews of police incident reports (PPD Form 75-48a) that documented stops, frisks and detentions by the PPD to determine whether there was probable cause or reasonable suspicion for the officers' actions and whether the stops and investigations of persons were undertaken in a racially biased manner.

86. Plaintiffs' counsel conducted several such reviews, involving the analysis of thousands of pedestrian and car stops in Philadelphia. In each review, counsel found and reported to the City and the PPD that a large number of stops, detentions and frisks were not supported by adequate cause or suspicion, and that there was a large racial disparity in the incidents of stops and frisks that could not be explained by factors other than racial bias. *See, e.g.,* Plaintiffs' Fifth Monitoring Report, Pedestrian and Car Stop Audit, December 7, 2000.

87. While the parties disputed the proper inferences to be drawn from the data and the analysis, they did agree that certain factors should be reviewed on a regular basis to ensure that the PPD was stopping and searching persons only with the required cause or suspicion and that race did not play an inappropriate role in the decision to stop, detain, frisk or search. Yet, the data compiled by the City continued to show lack of cause for stops, frisks and detentions, and a highly racially disparate impact on African-Americans and Latinos through to 2005, when monitoring of the 1996 Agreement terminated.

88. Since 2005, there have been many documented cases of unlawful and racially biased stops, frisks and searches by the PPD, both in Internal Affairs investigations and in litigation.

Defendants City of Philadelphia and Ramsey have failed to properly monitor and audit the conduct of PPD officers to ensure that the stops, frisks, searches and detentions do not violate the Constitution.

89.   In the period 2005-present, the number of persons who have been subjected to stops, detentions and frisks by the PPD has substantially increased.  As reported by the Research and Planning Unit of the PPD:

a.   In 2005, there were 102,319 pedestrian stops.  In 2009, there were 253,333 pedestrian stops, an increase of 148%.

b.   Of the 253,333 stops in 2009, over 183,000 or 72.2% were of African-Americans, who comprise 44% of the population of Philadelphia.

c.   Of all of the 2009 stops, only 8.4% led to an arrest, and the majority of these arrests were for alleged criminal conduct that was entirely independent from the supposed reason for the stop and/or frisk in the first place.

90.   A significant number of the arrests cited by the Research and Planning Unit were based on outstanding warrants (unknown at the time of the stop), or charges of resisting arrest, disorderly conduct or similar charges that were based on interactions following the initial stop. Upon information and belief, in only a small percentage of the stops was the arrest based on the "cause" or "suspicion" that was the reason for the initial police action.

**Failure to Properly Train, Supervise and Discipline PPD Officers**

91.   Defendants City and Commissioner Ramsey have instituted more aggressive stop and frisk practices in Philadelphia but, with deliberate indifference, they have failed to properly train, supervise and discipline PPD officers with respect to constitutional standards and limitations in conducting stops, frisks, searches, detentions and the use of unreasonable force under the Fourth and Fourteenth Amendments.   The risks of unconstitutional conduct by PPD officers in these police practices is substantial, and the failure to properly train and supervise have caused the violations that have been suffered by the named plaintiffs and the plaintiff class.

92.   In December 2003, the IAO issued a Report on the Disciplinary System of the PPD which concluded that the "disciplinary system in the Philadelphia Police Department remains fundamentally ineffective, inadequate and unpredictable."

93.   The IAO Report and a separate Report issued by a specially constituted Mayor's Task Force in 2002 cited serious and continuing deficiencies in critical areas directly relevant to the plaintiffs' claims in this case, including:

  • Excessive and chronic delays in resolving disciplinary complaints;
  • Lack of consistent, rational and meaningful disciplinary actions;
  • Failure to discipline substantial numbers of officers who were found to have engaged in misconduct.

94.   Notwithstanding these Reports and their detailed recommendations, according to data provided by the City in other litigation, the number of physical abuse complaints against PPD officers has more than doubled since 2001, the year that Commissioner Timoney left office. In 2008, Commissioner Ramsey's first year in office, the number of abuse complaints rose 20%.

95. A nationally recognized police-practices expert, Dr. Paul McCauley, has also examined the PPD's disciplinary system and several of his reports on this issue have been

provided to the City in prior litigation.  Dr. McCauley's review included an analysis of more

than one thousand Internal Affairs Division (IAD) investigations involving officers of the PPD.

In 2009, Dr. McCauley found that the deficiencies "as described by Green-Ceisler in 2003

continue today," including:

> • The PPD's internal investigatory process has fallen below accepted practices and is arbitrary and inconsistent;

> • The PPD discipline, as practiced, is incident based rather than progressive.  Thus, repeat violators are not being penalized in proportion to the number of violations;

> • The conduct of IAD investigations demonstrates that PPD internal affairs personnel are not adequately trained and supervised in the proper conduct of such investigations;

> • The existence of a PPD practice and custom in which police officers and supervisors fail to intervene when other officers violate the rights of citizens in their presence and refuse to report or provide information concerning the misconduct of other police officers, a custom or practice known as the "Code of Silence."

> • There are serious deficiencies in the quality of IAD investigations and the validity of the IAD findings and conclusions; and

> • The PPD lacks an effective early warning system to identify, track and monitor "problem" officers.

96.   A number of Courts of the Eastern District have denied the City's request for

summary judgment on municipal liability claims based on evidence that the PPD's disciplinary

system was constitutionally infirm.  *See, e.g.*, *Tindley v. City of Philadelphia*  (E.D.Pa. No. 09-

CV-0169 Brody, J.) (where the City's request for summary judgment on the Monell claim was

denied based on evidence of a failure to properly supervise and discipline police officers Thomas

Schaffling and Timothy Devlin, two of the defendant officers in this case)*; Lyons v. City of

Philadelphia,*  2007 U.S.Dist. LEXIS 76646*6 (E.D.Pa., No. 06-5195 issued October 15, 2007,

Padova, J.), *Henderson v. City of Philadelphia* (E.D. Pa., No. 06-CV-532, Dalzell, J.).

97.   The inadequate training, supervision and disciplining of the PPD is a direct and proximate cause of the defendant officers' unconstitutional conduct in this case, including improper stops, frisks, searches, detentions and the use of unreasonable force.

98.   On police practices involving stops, detentions, searches and frisks, defendants City and Commissioner Ramsey have failed to:

a.   Take appropriate disciplinary action and corrective measures against PPD officers who have engaged in unjustified stops, frisks, searches and detentions;

b.   Adequately monitor PPD officers who have incurred a substantial number of civilian complaints related to unjustified stops, frisks, searches, detentions and the use of force, even in instances where the number of complaints should have triggered monitoring under established departmental guidelines;

c.   Conduct adequate auditing to determine if the stops, frisks, searches and detentions conducted by PPD officers comply with the PPD's written policy;

d.   Take sufficient corrective and remedial action against PPD officers who provide fabricated, false, or impermissible  justifications for stops, frisks, searches and detentions; and

e.   Take sufficient corrective, disciplinary and remedial action to combat the "Code of Silence" under which PPD officers regularly conceal or fail to report police misconduct.

## Legal Claims

### Count 1

**Named Plaintiffs and Class Members Pursuant to 42 U.S.C. § 1983
Against All Defendants for Violations of the Fourth Amendment**

99.   Plaintiffs incorporate by reference paragraphs 1-98 of the Complaint.

100.   Defendants City, Ramsey, Donofrio, Jane Doe, McCormick, Giacomelli, Campbell, Port, Schaffling, Devlin, Stewart, Bernard and John Doe(s) #1-12 have implemented and enforced a policy, practice and/or custom of stopping, frisking, searching and detaining the named plaintiffs and the members of the plaintiff class without probable cause or reasonable suspicion of criminal conduct as required by the Fourth Amendment.

101.   The constitutional violations suffered by the named plaintiffs and the plaintiff class are directly and proximately caused by policies, practices and/or customs implemented and enforced by the defendants City and Commissioner Ramsey, as set forth in this Complaint.

102.   Defendants have acted with deliberate indifference to the Fourth Amendment rights of the named plaintiffs and members of the plaintiff class and as a direct and proximate result of the acts and omissions of the defendants, the Fourth Amendment rights of the named plaintiffs and plaintiff class members have been violated.

103.   The named plaintiffs and members of the plaintiff class have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless defendants are enjoined from continuing their policy, practice and/or custom of unconstitutional stops, detentions, searches, and frisks.

104.   Defendants have by the above described actions deprived the named plaintiffs and the plaintiff class of their rights to be free from unlawful seizures, searches, frisks, and detention. As a result, all named plaintiffs and members of the plaintiff class have suffered and will

25

continue to suffer harm in violation of their rights under the the Fourth and Fourteenth Amendments, and 42 U.S.C. §1983.

## Count 2

### Named Plaintiffs and Class Members Pursuant to 42 U.S.C. § 1983 Against All Defendants for Violation of Equal Protection Clause

105.   Plaintiffs incorporate by reference paragraphs 1-104 of the Complaint.

106.   Defendants City of Philadelphia and Commissioner, Ramsey, Donofrio, Jane Doe, McCormick, Giacomelli, Campbell, Port, Schaffling, Devlin, Stewart, Bernard and John Doe(s) #1-12 have implemented and enforced a policy, practice and/or custom of stopping, frisking, searching and detaining the named plaintiffs and members of the plaintiff class based on their race and/or national origin in violation of the Equal Protection Clause of the Fourteenth Amendment.

107.   These constitutional violations are directly and proximately caused by policies, practices and/or customs of the defendants City and Commissioner Ramsey, as set forth in this Complaint.

108.   Defendants have acted with the intent to discriminate on the basis of race or national origin in police practices relating to stops, detentions, frisks and searches.  As a direct and proximate result of the acts and omissions of the defendants, the Fourteenth Amendment rights of the named plaintiffs and the plaintiff class members have been violated.

109.   Defendants have intentionally targeted Black and Latino individuals for unconstitutional stops and frisks in areas where the named plaintiffs and members of the plaintiff class reside or visit.  Under these practices, policies and/or customs, the Equal Protection rights of the named plaintiffs and the plaintiff class will continue to be violated.

26

110.  The named plaintiffs and members of the plaintiff class have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless defendants are enjoined from continuing their policy, practice and/or custom of unconstitutional stops, detentions, searches, and frisks.

111.  Defendants have by the above described actions deprived all the named plaintiffs and members of the plaintiff class of their rights to be free from unlawful seizures, frisks, searches and detention.   As a result, all named plaintiffs and members of the plaintiff class have suffered and will continue to suffer harm in violation of their rights under the Fourth and Fourteenth Amendments, and 42 U.S.C. §1983.

### Count 3

### Named Plaintiffs and Class Members Under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000(d), *et seq.* Against the City

112.  Plaintiffs incorporate by reference paragraphs 1-111 of the Complaint.

113.  The law enforcement activities described in this Complaint have been funded, in part, with federal funds.

114.  Discrimination based on race in the law enforcement activities and conduct described in this Complaint is prohibited under 42 U.S.C. § 2000(d), *et seq.*  The acts, conduct and omissions of the defendants were intended to discriminate on the basis of race and/or national origin, and/or had a disparate impact on minorities, particularly Blacks and Latinos.

115.  The named plaintiffs and members of the plaintiff class have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless defendants are enjoined from continuing their policy, practice and/or custom of unconstitutional stops, detentions, frisks and searches.

116.  As a direct and proximate result of the above actions and conduct, the named plaintiffs and members of the plaintiff class have been deprived of their rights under civil rights statutes and the Constitution of the United States, and in particular Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000(d), *et seq.*

## Count 4

### Claims of the Named Plaintiffs Pursuant to 42 U.S.C. § 1983

117.  Plaintiffs incorporate by reference paragraphs 1-116 of the Complaint.

118.  The stops, frisks, searches, and detentions of all named plaintiffs, the use of unreasonable force on Plaintiffs Cornish, Cutler and Williams, and the malicious prosecution of Plaintiff Streaty, were done without  probable cause or reasonable suspicion and were based on the impermissible factors of race and/or national origin.

119.  As a direct and proximate result of such acts, defendants have deprived the individual named plaintiffs of their rights under the Fourth and Fourteenth Amendments, in violation of 42 U.S.C. §1983.

120.  As a direct and proximate result of those constitutional abuses, the individual named plaintiffs have suffered, and will continue to suffer, humiliation, physical and emotional pain and suffering, loss of liberty and violations of their civil rights.

## Count 5

### Supplemental State Law Claims

121.  Plaintiffs incorporate by reference paragraphs 1-120 of the Complaint.

122.  The acts and conduct of the individual defendant officers constitute assault and battery, false arrest and false imprisonment under the laws of the Commonwealth of Pennsylvania, and this Court has supplemental jurisdiction to hear and adjudicate these claims.

## Jury Demand

123.  All plaintiffs request a jury trial as to all defendants and all counts of the Complaint.

## Relief

Wherefore, the named plaintiffs and members of the plaintiff class they seek to represent, respectfully request that the Court:

A.  Issue an Order certifying this case as a class action pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, with the named plaintiffs as class representatives;

B.  Issue a class-wide judgment declaring that the defendants' policy, practice and/or custom of unjustified stops, frisks, searches and detentions challenged in this Complaint violates the Fourth and Fourteenth Amendments to the United States Constitution and Title VI.

C.  Issue an order for the following injunctive relief:

1.  Enjoin the defendants and the Philadelphia Police Department from continuing its policy, practice and/or custom of stops, frisks, searches and detentions without probable cause or reasonable suspicion;

2.  Enjoin the defendants and the Philadelphia Police Department from continuing its policy, practice and/or custom of conducting stops, frisks, searches and detentions based on racial and/or national origin profiling;

3.  Require the defendants City and Commissioner Ramsey to institute and implement training, supervision and discipline that will eliminate the policy, practice and/or custom of unconstitutional stops, frisks, searches and detentions;

29

4.  Require the defendants City and Commissioner Ramsey to monitor and audit

stop, frisk, search and detention practices of the PPD, to ensure that stops, frisks,

searches and detentions comport with constitutional requirements.

D.  Award named plaintiffs Bailey, Streaty, Montero, Fulton, Blackmon, Cornish, Cutler

and Williams compensatory damages against all defendants;

E.  Award all plaintiffs reasonable attorneys' fees pursuant to 42 U.S.C. §1988;

F.  Award all plaintiffs costs of litigation pursuant to 42 U.S.C. §§1920 and 1988; and

G.  Award such other and further relief as this Court may deem appropriate and just and

in the interests of justice.

<table>
<tr><td>

S/ Paul Messing
Paul Messing
No. 17749
KAIRYS, RUDOVSKY,
MESSING & FEINBERG, LLP
718 Arch Street, Suite 501S
Philadelphia, PA 19106
(215) 925-4400
Counsel for Plaintiffs

</td><td>

S/ David Rudovsky
David Rudovsky
No. 15168
KAIRYS, RUDOVSKY
MESSING & FEINBERG, LLP
718 Arch Street, Suite 501S
Philadelphia, PA 19106
(215) 925-4400
Counsel for Plaintiffs

</td></tr>
<tr><td>

S/ Mary Catherine Roper
Mary Catherine Roper
No. 71107
AMERICAN CIVIL LIBERTIES UNION
125 South 9th Street, Suite
Philadelphia, PA 19106
(215) 592-1513
Counsel for Plaintiffs

</td><td>

S/ Seth Kreimer
Seth Kreimer
No. 26102
3400 Chestnut Street
Philadelphia, PA 19104
Counsel for Plaintiffs

</td></tr>
</table>